Glen R. VAUGHT and Carolyn Sue
VAUGHT *v.* Norman SATTERFIELD and
Wilma SATTERFIELD

76-116                                          542 S.W. 2d 502

Opinion delivered November 1, 1976

*Cearley, Gitchell, Bogard & Mitchell,* for appellants.

*Patterson & Welch,* for appellees.

CONLEY BYRD, Justice. From a directed verdict in favor of appellees Norman Satterfield and his wife, the appellants Glen R. Vaught and his wife appeal contending that the failure of appellees to disclose a defect while selling their house to appellants constituted fraud upon which appellants were entitled to damages.

The record shows that in the early spring of 1971, the Satterfields owned a house at 810 "F" Street in North Little Rock. The house was constructed on a hillside lot that had been excavated in such manner that there was a steep incline sloping from the rear of the house up to the rear property line. About three feet behind the house was a retaining wall. In the early spring the Satterfields contracted with H. W. Tucker Company to construct a concrete swale immediately behind the house. When the Satterfields found out that the concrete swale did not cure the water seepage problem in the house, they listed the house with National Realty Company. Appellant, Glen R. Vaught, who had been issued a real estate license as a salesman with National Realty Company went with Paul Harris, an agent of National Realty Company, to look at the house about August 1, 1971. Appellant Vaught also looked at the house some three days to a week later. As a result of what he saw during those visits the Vaughts, without ever seeing or talking to the Satterfields, purchased the house for $4,000 down and assumed an outstanding mortgage in the approximate amount of $12,000. The purchase price of the house was discounted $600 through an arrangement between Paul Harris and appellant Vaught because of the latter's real estate salesman's license. During the Arkansas-Texas football game in October, 1971, water started seeping into the house. The Vaughts have now corrected the problem through the expenditure of $5,286 over a period of about three years. There is proof in the record that the fair market value of the house in 1971, without the water seepage problem would have been only $15,900 and that with the water seepage problem the value would not have exceeded the $12,000 outstanding mortgage. Appellant Vaught's testimony as to what he observed upon his first visit is as follows:

"Q. All right, did you ever ask Mr. Harris in regard to any kind of water problems? Did you ever inquire in that regard?

A. The first time I looked at the house, Mr. Harris and I went up there by ourselves. We walked through the house, I believe one of Mr. Satterfield's children was at home that day and we went in the house, walked through the rooms and briefly looked at it, walked out the back door, the kitchen or dining door onto the little porch in the back and at that time we walked up the steps in the area where this patio was, along in that area and I believe Mr. Harris was standing down below the steps and I was maybe standing on the steps at the time and I asked Mr. Harris, I said, do you know if there is any water problems here and Mr. Harris said he did not.

Q. And that was the only conversation that took place?

A. And I said well, looked like for some reason they've painted and fixed this up, awful nice here.

Q. You talking about that swale?

A. The swale had been painted green, the wall had been painted green and the swale had been painted green so you couldn't tell whether there was anything new or old or what there. It had just recently been painted and I didn't know whether the swale had been there ten years or two months or the wall either one.

Q. So then that was the only conversation you ever had on it?

A. Right."

To support their position the appellants rely upon *Weikel* v. *Sterns*, 142 Ky. 513, 134 S.W. 908 (1911), and *Lingsch* v. *Savage*, 213 Cal. App. 2d 729, 29 Cal. Rptr. 201, 8 A.L.R. 3rd 537 (1963). In the Kentucky case the appellant had erected a residence over a cesspool into which he was still pumping sewage. The court in that case had no trouble in finding a

duty of disclosure and that the vendor's silence on the subject amounted to fraud.

In the California case the allegation was that the vendors knew the building was illegal and had been placed for condemnation by the city; that the appellants had no knowledge thereof; and that in purchasing the property, they did so in justifiable reliance upon the vendor's nondisclosure and in the belief that said property was legally tenantable. In holding that the complaint stated a cause of action as against a demurrer, the Court stated:

> "It is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. . . ."

Under the facts in the record before us, appellants cannot bring themselves within the results of either the Kentucky or California ruling. The record shows from appellant Vaught's own testimony that his observance of the premises on his first visit was such as to cause him to inquire of Paul Harris as to his knowledge of a water problem. When Paul Harris truthfully answered that he did not know, appellant Vaught dropped the subject and made no further inquiry. As we read the authorities upon which appellants rely, the burden of proof to show the fraud alleged required not only a showing that appellants did not know the facts but also that the ascertainment of the undisclosed fact was not within the reach of their diligent attention or observance. Since appellants failed to show that the facts were not within the reach of their diligent attention or observation, it follows that the trial court correctly directed a verdict against them.

Affirmed.

We agree: HARRIS, C.J., and HOLT and ROY, JJ.