**Jack B. COHEN, Betty L. Cohen, Plaintiffs–Appellants,**

**v.**

**WEDBUSH, NOBLE, COOKE, INC., Defendant–Appellee.**

**No. 87–6174.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1988.

Decided March 2, 1988.

Neal M. Goldstein, Abrams & Goldstein, Los Angeles, Cal., for plaintiffs-appellants.

Dawn M. Schock, Jeffrey M. Jones, Keesal, Young & Logan, Long Beach, Cal., for defendant-appellee.

Before HUG, KOZINSKI and NOONAN, Circuit Judges.

KOZINSKI, Circuit Judge:

We consider the enforceability of an agreement to arbitrate claims arising out of a stock margin purchase agreement.

**Background**

On October 13, 1986, plaintiffs Jack B. and Betty L. Cohen entered into a Customer's Margin Account Agreement with defendant Wedbush, Noble, Cook, Inc., a stock brokerage firm. The margin agreement provided that Wedbush would loan money to the Cohens to finance the purchase of securities, and required the Cohens to maintain certain securities as collateral for the repayment of those loans. The agreement further provided that "all controversies which may arise ... concerning any transaction or the construction, performance or breach of this ... agreement ... shall be determined by arbitration...." [1]

On February 20, 1987, Wedbush sold securities worth some $3 million held as collateral in the Cohens' account. The Cohens, alleging that this sale violated their agreement with Wedbush, brought suit in federal district court for breach of fiduciary duty, breach of contract and breach of the covenant of good faith and fair dealing. They sought relief in the form of compensatory and punitive damages, imposition of a constructive trust and award of attorney's fees.

Wedbush answered, alleging inter alia that the claims brought by the Cohens

---

1. The arbitration clause provides in full:

 **ARBITRATION:** It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws. The undersigned agrees, and by carrying an account for the undersigned, you agree, that except as inconsistent with the foregoing sentence, all controversies which may arise between the undersigned and you or any of your officers, employees or agents, concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration in accordance with the rules, then in effect, of the National Associa-

tion of Securities Dealers, Inc., or the New York Stock Exchange, Inc., as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election on behalf of the undersigned. The award of the arbitrators or a majority of them shall be final, and judgement upon the award rendered may be entered in any state or federal court having jurisdiction.
 Excerpt of Record (ER) 4, exh. A. This provision appears on the same page as, and four paragraphs above, the signatures of Jack and Betty Cohen.

were subject to arbitration under the margin agreement, and filed a motion to compel arbitration and stay the proceedings. On June 24, 1987, the district court entered an order compelling arbitration of all claims. The Cohens appeal.

### Discussion

■ The Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982), governs our disposition of this case. The Act provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal district courts must issue orders compelling arbitration upon a showing of a failure to comply with a valid arbitration agreement. *Id.* § 4: The Arbitration Act thus "reverse[s] centuries of judicial hostility to arbitration agreements," *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974), placing such agreements " 'upon the same footing as other contracts,' " *id.* at 511, 94 S.Ct. at 2453 (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924)), and requiring the courts to "rigorously enforce" them. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

■ The Act creates "a body of federal substantive law of arbitrability," enforceable in both state and federal courts and preempting any state laws or policies to the contrary. *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *see Southland Corp. v. Keating,* 465 U.S. 1, 10–12, 16, 104 S.Ct. 852, 858–59, 861, 79 L.Ed.2d 1 (1984). The availability and validity of defenses against arbitration are therefore to be governed by application of federal standards. *See Bayma v. Smith Barney, Harris Upham & Co.,* 784 F.2d 1023, 1024 (9th Cir.1986).

■ The Cohens raise several objections to the district court's order compelling arbitration. They contend that the arbitration clause is unenforceable as an unconscionable provision of a contract of adhesion, that they were fraudulently induced to sign the agreement, and that arbitration provisions in securities purchase agreements are unenforceable as fraudulent and manipulative devices under regulations promulgated by the Securities and Exchange Commission. We address these contentions in turn, mindful of the Supreme Court's dictate that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem. Hosp.,* 460 U.S. at 24, 103 S.Ct. at·941.

**A.** The Cohens base their claim of unconscionability on *Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 183 Cal. App.3d 1097, 228 Cal.Rptr. 345 (1986), and *Lewis v. Prudential–Bache Sec., Inc.,* 179 Cal.App.3d 935, 225 Cal.Rptr. 69 (1986), cases arising out of challenges to the methods used by stockbrokers to calculate interest owed them by their clients. The arbitration clause at issue in *Prudential* provided for arbitration under the auspices of either the American Arbitration Association (AAA) or the New York Stock Exchange (NYSE). The court found that arbitration before the NYSE did not "meet[ ] the level of integrity requisite to withstand a challenge of unconscionability," 179 Cal. App.3d at 944–45, 225 Cal.Rptr. 69, because the challenged practices were virtually universal among securities brokerage firms, and thus any arbitration panel selected by the securities industry itself would be "presumptive[ly] bias[ed]." *Id.* at 944, 225 Cal. Rptr. 69. The court did, however, order arbitration before the AAA because that body was completely impartial. *Id.* at 945, 225 Cal.Rptr. 69. The *Merrill Lynch* court relied on *Prudential* in holding that an agreement to arbitrate under the procedures established by either the NYSE or the National Association of Securities Dealers (NASD) was unconscionable because both procedures were "institutionally biased." 183 Cal.App.3d at 1102, 1106, 228 Cal.Rptr. 345.

The Cohens contend that their claims, like those in *Merrill Lynch* and *Prudential,* attack "long standing practices and customs" of the securities industry, Appellants' Opening Brief at 19, and that the arbitration clause calling for NYSE or NASD arbitration is therefore unconscionable. Their complaint alleges that Wedbush violated the margin agreement in selling their securities. The agreement provided that Wedbush could liquidate the Cohens' margin account whenever "the collateral deposited to protect the [Cohens'] account is determined by [Wedbush] in [its] discretion ... to be inadequate to properly secure the account." ER 4, exh. A. The Cohens argue that Wedbush will defend its exercise of discretion by reference to industry standards; indeed, Wedbush raised as an affirmative defense that "it performed brokerage services in a reasonable and pru-

dent manner, complying with ... the standard of care in the industry...." ER 3 at 10. The Cohens counter that, insofar as industry standards permitted the sale of their securities, they would challenge such standards as unreasonable. We agree with the Cohens that, as in *Prudential* and *Merrill Lynch*, this case may call into question industry-wide practices.[2]

We respectfully disagree, however, with the conclusion of the California courts that the doctrine of unconscionability is applicable under these circumstances. *Cf. Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir.1984) (rejecting claim that agreement to arbitrate securities claims was unconscionable where plaintiffs made no showing that agreement was commercially unreasonable or that they had no reasonable opportunity to understand it). As the Supreme Court has recognized, the Securities and Exchange Commission has virtually plenary authority over the arbitration procedures adopted by the national securities exchanges and securities associations. *See Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 2341, 96 L.Ed.2d 185 (1987). This authority includes the power to "abrogate, add to, and delete from" the arbitration rules adopted by such bodies if necessary or appropriate to protect the rights created by the Securities Acts. *Id.;* 15 U.S.C. § 78s(c) (1982). The SEC has explicitly approved the NYSE and NASD arbitration rules and procedures at issue in this case. *McMahon*, 107 S.Ct. at 2341. Because Congress has committed to the SEC the task of ensuring that the federal rights established by the Securities Acts are not compromised by inadequate arbitration procedures, we are bound by the Commission's determination that the procedures at issue here are satisfactory. *Cf.* Huber, *Safety and the Second Best: The Hazards of Public Risk Management in the Courts*, 85 Colum.L. Rev. 277, 333–35 (1985). Any contrary holding would frustrate this carefully crafted federal regulatory scheme.

Our conclusion is not affected by the Cohens' contention that the arbitration agreement is part of a contract of adhesion.[3] We have previously held that state law adhesion contract principles may not be

invoked to bar arbitrability of disputes under the Arbitration Act. *Bayma*, 784 F.2d at 1024–25. We reaffirm that holding today.

The strong federal policy favoring arbitration, coupled with the extensive regulatory oversight performed by the SEC in this area, compel the conclusion that agreements to arbitrate disputes in accordance with SEC-approved procedures are not unconscionable as a matter of law. The Cohens' first objection to the arbitrability of their claims is, therefore, unfounded.

**B.** The Cohens next contend that they were fraudulently induced to enter into the agreement to arbitrate by Wedbush's failure to disclose the effect of the arbitration clause and by the advice of a Wedbush agent that the margin agreement would "not compromise any of [their] rights." ER 8, 10. They also allege that they were not given a copy of the agreement. The Cohens argue that they are entitled to a jury trial on the issue of arbitrability. They rely on 9 U.S.C. § 4, which provides that "[i]f the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof."

Wedbush responds that the Cohens' objections attack the entire contract, rather than the arbitration clause in particular, and are therefore subject to arbitration. As the Supreme Court has explained,

> if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) (footnote omitted).

The contention that Wedbush fraudulently misled the Cohens by failing to inform them of the meaning and effect of the arbitration clause is not aimed at the entire contract; it bears directly on the validity of their assent to the arbitration clause. This issue is therefore not suitable for arbitration and the courts "may proceed to adjudicate it." *Id.* at 404, 87 S.Ct. at 1806. This does not mean, however,

---

**2.** We note, however, that almost no controversy between securities dealers and their clients could escape this characterization by the use of similar logic.

**3.** The Cohens allege that they were told Wedbush would not accept their margin account unless they signed the margin agreement.

that the Cohens are entitled to a jury trial. In order for a mere omission to constitute actionable fraud, a plaintiff must first demonstrate that the defendant had a duty to disclose the fact at issue. *Chiarella v. United States,* 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980); *Sugarhouse Finance Co. v. Anderson,* 610 P.2d 1369, 1373 (Utah 1980).

 We know of no case holding that parties dealing at arm's length have a duty to explain to each other the terms of a written contract. We decline to impose such an obligation where the language of the contract clearly and explicitly provides for arbitration of disputes arising out of the contractual relationship. This is not a criminal case; the Cohens' argument that there was no "showing of intelligent and knowing waiver of the substantive rights at issue," Appellants' Opening Brief at 24, is simply beside the point. As the Seventh Circuit held in *Pierson.*

> [T]hough *perhaps* not contemplated by the [plaintiffs] when they signed the contract, loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate. The [plaintiffs] cannot use their failure to inquire about the ramifications of that clause to avoid the consequences of agreed-to arbitration.

742 F.2d at 339 (emphasis in original). The Cohens do not state a claim for fraudulent failure to disclose any material facts.

 The Cohens' other allegation in support of the claim of fraud is that they were "advised, either expressly or implicitly, ... that [the margin agreement] did not compromise any of [their] rights." ER 8, 10. Even assuming the dubious proposition that an "implicit" statement by a non-lawyer regarding a question of law can constitute fraud, the alleged statement here cannot fairly be characterized as fraud in the inducement as to the *arbitration* clause. The statement is quite general, relating to the contract as a whole rather than to the arbitration clause in particular. Indeed, the Cohens complain that nothing at all was said about the arbitration clause. Because the Cohens have not raised a challenge to the validity of the arbitration clause itself, this issue is subject to mandatory arbitration. *See Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. at 1806; *Amoco Transp. Co. v. Bugsier Reederei & Bergungs, A.G. (In re Oil Spill by Amoco Cadiz),* 659 F.2d 789, 794–95 (7th Cir.1981).

 Even if the alleged statement were specifically directed to the arbitration clause, it would not give rise to a cause of action for fraud. Under traditional common law principles, a misrepresentation renders a contract voidable only if, inter alia, the plaintiff reasonably relied on that misrepresentation in entering the contract. *See* 12 S. Williston, *The Law of Contracts* § 1515B, at 485 (3d ed. 1970). Although there is not complete uniformity on this issue, the traditional and, we believe, the better rule is that reliance on a misrepresentation is not reasonable when the plaintiff could have, through the exercise of reasonable diligence, ascertained the truth of the matter. *See, e.g., Andrus v. St. Louis Smelting & Refining Co.,* 130 U.S. 643, 647, 9 S.Ct. 645, 646, 32 L.Ed. 1054 (1889); *Bezin v. Ginsburg I,* 59 Ill.App.3d 429, 16 Ill.Dec. 595, 603, 375 N.E.2d 468, 476 (1978); *Vaught v. Satterfield,* 260 Ark. 544, 542 S.W.2d 502, 504 (1976); *Wilkinson v. Walker,* 143 Ga.App. 838, 240 S.E.2d 210, 211 (1977). Requiring reasonable investigation by the party claiming fraud is particularly appropriate in cases where, as here, the explicit language of the contract directly contradicts the alleged misrepresentation. *See, e.g., Turner v. Johnson & Johnson,* 809 F.2d 90, 95–96 (1st Cir.1986); *Sanger v. Yellow Cab Co.,* 486 S.W.2d 477, 481 (Mo.1972); *Evans v. State Farm Mut. Auto. Ins. Co.,* 269 S.C. 584, 239 S.E.2d 76, 77 (1977).

 We see no unfairness in expecting parties to read contracts before they sign them. As the First Circuit stated in *Turner,* "if a jury is allowed to ignore contract provisions directly at odds with oral representations allegedly made during negotiations, the language of a contract simply would not matter anymore.... Contracts would become no more than presumptive statements of the parties' intentions, in-

stead of legally enforceable agreements." 809 F.2d at 96. This reasoning is particularly persuasive in the context of arbitration clauses, where permitting plaintiffs to present their claims to a jury would frustrate the very policies these clauses, and the Arbitration Act itself, are meant to promote. We therefore hold that allegations of misrepresentations directly contrary to the specific and unambiguous terms of a written arbitration agreement do not, as a matter of law, state a claim for fraud.

The Cohens also claim that the arbitration clause is unclear and that they were unaware of the "nuances" of the clause. We are unable to understand how any person possessing a basic education and fluent in the English language could fail to grasp the meaning of that provision. *See Pierson*, 742 F.2d at 339. Whether the Cohens read the agreement but did not notice the arbitration clause, or chose not to read the agreement at all, their reliance on Wedbush's alleged misrepresentation was unreasonable in light of the clear and explicit language of the contract. *See* n. 1 *supra*. Accordingly, they are not entitled to a jury trial on this issue.[4]

■ C. The Cohens' final objection to enforcement of the arbitration provision is that it violates SEC Rule 15c2–2, 17 C.F.R. § 240.15c2–2 (1987), which until recently declared that agreements binding customers to arbitrate with their brokers disputes arising under the securities laws are "fraudulent, manipulative or deceptive act[s] or practice[s]...." As the Supreme Court noted in *McMahon*, Rule 15c2–2 was " 'premised on the Commission's assumption ... that agreements to arbitrate Rule 10b–5 claims were not, in fact, arbitrable.' " 107 S.Ct. at 2341 n. 3 (quoting Brief for the Securities and Exchange Commission as *Amicus Curiae* 18 n. 13). It is clear after *McMahon* that the Commission's assumption was erroneous, and that claims under the Securities Exchange Act are in fact subject to arbitration. 107 S.Ct. at 2343.

The SEC has accordingly rescinded Rule 15c2–2 in light of *McMahon*. *See* Rescission of Rule Governing Use of Predispute Arbitration Clauses in Broker–Dealer Customer Agreements, Rel. No. 34–25034, 52 Fed.Reg. 39,216 (1987) ("announcing the rescission of Rule 15c2–2 ... since, in light of the development of case law, the rule is no longer appropriate"). The Cohens' argument is therefore without foundation.

### Conclusion

The Cohens have failed to offer any meritorious objections to enforcement of the arbitration agreement. Accordingly, the judgment of the district court staying proceedings and compelling arbitration is AFFIRMED.

---

4. The Cohens' complaint that they were not given a copy of the agreement is not legally significant; later review of its provisions would not have satisfied the Cohens' duty to read before signing.