WESTERN HOSPITALS FEDERAL CREDIT UNION, a federal credit union, Plaintiff,

v.

E.F. HUTTON & COMPANY, INC., a Delaware corporation, Shearson Lehman Hutton, Inc., a Delaware corporation, Paul Michael Gurrola, Defendants.

No. C88–1847 TEH.

United States District Court, N.D. California.

Aug. 3, 1988.

**1040**

Patrick Baldwin, Palo Alto, Cal., for plaintiff.

Stephen Young, Mitchell J. Albert, Keesal, Young & Logan, Long Beach, Cal., for defendants.

## ORDER COMPELLING ARBITRATION

THELTON E. HENDERSON, District Judge.

This matter comes before the Court on defendant E.F. Hutton & Company's (Hutton) motion to compel arbitration. After careful consideration of the parties' papers and oral arguments, we hereby grant defendant's motion.

### 1. Factual Background.

In November 1985, plaintiff Western Hospitals Federal Credit Union ("Credit Union") opened a securities brokerage account with E.F. Hutton. Grace Ventrice, a bookkeeper for the Credit Union, handled the negotiations for Credit Union; she communicated with defendant Paul Gurrola, a broker for Hutton. According to the Credit Union, Ventrice informed Gurrola that the Credit Union was not a sophisticated investor; it sought safe and conservative investments, and intended to rely heavily on Hutton's professional expertise. From November 1985 to November 1986, Hutton allegedly churned the account and made risky investments in violation of the parties' prior understanding. Hutton also allegedly forged Ventrice's signature on a backdated 1985 agreement.

In November 1986, Gurrola sent a second client agreement which she signed. That agreement contains the arbitration provision at issue here. It obligates the parties to arbitrate all controversies arising from their agreement, unless arbitration would be void under the federal securities laws.

On May 19, 1988, the Credit Union filed a complaint against Hutton in this Court, alleging violations of federal and California Securities Acts and numerous pendent state law claims. Hutton now moves to enforce the arbitration clause and stay this action.

### 2. Affirmative Misrepresentation Defense.

█ Plaintiff opposes arbitration and advances a defense to enforcement of the clause: plaintiff claims that the agreement to arbitrate was induced by a fraudulent affirmative misrepresentation. Plaintiff alleges that Gurrola informed Ventrice that the November 1986 agreement was merely a "paperwork requirement" that did not substantively alter the parties' original understanding. Since the arbitration agreement was allegedly induced by fraud, the Credit Union contends that we should not enforce it.

Defendants respond by citing *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404–405, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). In that seminal case, the Supreme Court held that arbitration clauses are severable from the contracts in which they are embedded. Thus, even if a party maintains that the entire contract containing the arbitration clause is unenforceable, the court should nevertheless honor the arbitration provision and allow the arbitrator to hear that party's contract defenses. The only exception to this broad rule favoring arbitration arises when the party opposing arbitration argues that the arbitration provision itself is unenforceable—when the party aims its defense not at the contract as a whole, but at the arbitration clause itself. *Id.*

We have precisely such a case before us. Plaintiff painstakingly points out that all of the contract provisions but the arbitration clause faithfully memorialize the parties' prior understanding. They direct their allegations of fraud exclusively at the arbitation clause, stating that the alleged misrepresentation taints only that one provision.

These facts are quite similar to those found in *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 286 (9th Cir.1988). In *Cohen*, plaintiffs sued a brokerage firm, and argued that an arbitration clause should not be enforced, since the firm failed to explain the meaning and effect of the clause. The court found that plaintiff's contention "is not aimed at the entire contract; it bears directly on the validity of their assent to the arbitration clause." Since the claim was not arbitrable under *Prima Paint, supra,* the court proceeded to adjudicate it. *Id.*

We follow *Cohen* and find that the fraud defense is directed at the arbitration clause and not the entire contract; we therefore proceed to adjudicate it.

### 3. Reasonable Reliance.

As the *Cohen* court noted, raising a defense to an arbitration clause does not automatically entitle a litigant to a jury trial on that defense. The *Cohen* court turned to the defense raised by the plaintiffs, and rejected it. The court held that a broker does not have a duty to explain the meaning and effect of an arbitration provision. *Id.* at 287.

█ The *Cohen* court also rejected another challenge to the arbitration provision that is very similar to the challenge raised here. Plaintiffs argued that defendant defrauded them by telling them that the client agreement, including the arbitration clause, did not compromise any of their rights. The court held as a matter of law that plaintiffs could not reasonably rely on that assurance, since the "explicit language of the contract directly contradicts the alleged misrepresentation." *Id.*

We are constrained to apply *Cohen* to the case before us. Like the agreement in *Cohen,* the November 1986 agreement explicitly states that the parties' disputes shall be arbitrated. The *Cohen* court has decided that plaintiff/investors should be bound by the terms of such clauses, despite a brokerage firm's alleged misrepresentations about the clause's effect. We must apply that decision to the case before us, since the alleged misrepresentation is nearly identical to the one made by defendants in *Cohen.*

Having followed *Cohen,* we now pause a moment to question whether it advances a fair result in this case. Accepting the Credit Union's allegations as true, it appears that defendants fraudulently induced plaintiffs to agree to arbitrate in an effort to minimize its liability for improper acts

performed before the agreement was signed. Grace Ventrice, the Credit Union's representative, has a high school education and informed Gurrola that the Credit Union was unsophisticated and would rely on Hutton's professional advice. Gurrola informed her that signing this agreement was a paperwork formality that would not alter plaintiff's rights. This arbitration agreement itself is not pellucid: the first sentence states that "the agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws." The next sentence states that "except as inconsistent with the foregoing sentence, all controversies which may arise between [the parties] ...shall be determined by arbitration."

Should an investor representative such as Ventrice be held as a matter of law to be able "to grasp the meaning of [the arbitration] provision," as the *Cohen* court has so resolutely determined? 841 F.2d at 288. We wonder. The first sentence of the arbitration clause involves a very complicated dispute about the arbitrability of different federal security laws claims. Indeed, *different judges of the United States Supreme Court* have disagreed about which federal statutes void arbitration clauses. *See Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 2338–2343, 96 L.Ed.2d 185 (1987), holding that the 1934 Securities Act did not void arbitration agreements; *Wilko v. Swan,* 346 U.S. 427, 435, 74 S.Ct. 182, 186, 98 L.Ed. 168 (1953), holding that the 1933 Securities Act does void arbitration clauses. While *McMahon* did not expressly overrule *Wilko,* courts have concluded that *McMahon* "undercuts every aspect of *Wilko* " so that "a formal overruling of *Wilko* appears inevitable—or, perhaps, superfluous." *Noble v. Drexel, Burnham, Lambert, Inc.,* 823 F.2d 849, 850 n. 3 (5th Cir.1987). *But see Continental Serv. L & H Insurance v. A.G. Edwards,* 664 F.Supp. 997, 1001 (M.D. La.1987); *Schultz v. Robinson–Humphrey/American Express Inc.,* 666 F.Supp. 219 (M.D.Ga.1987), holding that *Wilko* is still good law and claims under the 1933 Act are not arbitrable.

Given this confusion among *federal courts*, we are able "to understand how [a] person possessing a basic education and fluency in the English language would fail to grasp the meaning of [the arbitration] provision." 841 F.2d at 288. We believe that an unsophisticated investor could easily misapprehend the meaning of this confusing and ambiguous provision and waive the cherished right to jury trial.

Were we writing from a blank slate, we would hold that a broker has a duty to explain the meaning and significance of an arbitration provision to an unsophisticated investor. At the very least, we certainly would not enforce an arbitration agreement when a broker incorrectly represents that the arbitration clause's contract is merely a paperwork formality.

Since such a ruling is foreclosed by *Cohen,* we reject that defense to the arbitration clause.

### 4. Nondisclosure.

■ Plaintiff also contends that the arbitration provision is void because Hutton failed to disclose facts about their handling of plaintiff's account prior to plaintiff's signing of the client agreement. Hutton allegedly failed to inform the Credit Union that Hutton had churned the account and made risky investments in violation of their understanding. Plaintiff argues that Hutton had a fiduciary duty to reveal these alleged facts, particulary since the facts were uniquely within defendant's knowledge. The breach of this duty voids the arbitration clause.

We must reject this argument as contrary to *Prima Paint* and its progeny. Plaintiff is essentially bootstrapping the conduct for which it is suing Hutton into a separate reason for voiding the arbitration clause. The Credit Union alleges that had they known that defendant had committed the acts sued upon—churning and improper investments—they would not have signed the arbitration clause. *Prima Paint* instructs us to sever a forum selection provision from the underlying disputes between the parties, and to honor the forum selec-

tion agreement if it is not the object of some independent challenge. Here, there is no independent challenge to the arbitration clause; plaintiff alleges the same facts as alleged in the underlying dispute to void the arbitration clause.[1] We therefore reject this argument, and order the parties to submit to arbitration pursuant to the agreement.[2]

IT IS SO ORDERED.

---

1. We also note that if we accepted this argument, almost all investors would be able to circumvent arbitration clauses by alleging that the broker's improper conduct not only gives rise to specific causes of action, but voids the arbitration agreement designed to process such disputes.

2. We must reject plaintiff's argument that the New York Stock Exchange is an industry-biased, unfair forum for arbitration, since the Supreme Court approved NYSE arbitrations in *McMahon, supra,* 107 S.Ct. at 2340–2341.