**SNAP–ON TOOLS CORPORATION,**
Petitioner,

v.

**William C. VETTER, Respondent.**

No. CV 93–34–M–CCL.

United States District Court,
D. Montana,
Missoula Division.

Oct. 8, 1993.

Paul J. Petit, Petit Law Office, Missoula, MT, for petitioner.

Donald D. Snavely, Snavely Law Office, Missoula, MT, for respondent.

*OPINION AND ORDER*

LOVELL, District Judge.

A hearing on a petition to compel arbitration and a petition to stay state court proceedings was held October 4, 1993. Jurisdiction is proper under 28 U.S.C. § 1332. For the reasons set forth below, I grant these petitions.

## BACKGROUND

On September 11, 1990, Petitioner Snap-on Tools Corporation (Snap–On) and Respondent William C. Vetter (Vetter) entered into a dealership agreement containing a provision for arbitration. On February 24, 1993, Vetter and his spouse, Elaine Lapointe–Vetter, commenced an action in state court in Missoula County, Montana, against Snap-on and against one current employee, Steve Gulledge, and another former employee, James Gomendi. On March 18, 1993, Snap-on filed this action against Vetter in federal court to compel arbitration. On March 22, 1993, Snap-on moved the state court to stay its action pending arbitration.

After argument, the state court denied Snap-on's motion by order dated May 27, 1993. Snap-on sought a writ of supervisory control from the Montana Supreme Court, which was denied on July 27, 1993. Snap-on also appealed the state court order, but on August 31, 1993, the Montana Supreme Court dismissed Snap-on's appeal as interlocutory. On August 11, 1993, Snap-on made a demand for arbitration to the American Arbitration Association, requesting that the arbitration hearing take place in Missoula, Montana. Finally, on September 23, 1993, Snap-on petitioned this court to stay the state court proceeding.

## FACTS

On its signature page, the dealership agreement between Snap-on and Vetter provides for arbitration. The arbitration provision consists of three paragraphs, beginning as follows:

11. RESOLUTION OF DISPUTES—ARBITRATION. Any controversy or dispute arising out of or relating to this Agreement, including, but not limited to,

any claim by the Dealer concerning the entry into, performance under or termination of this Agreement, any claim against an employee, ... or any claim of breach of the Agreement, shall be submitted to final and binding arbitration as the sole and exclusive remedy for any controversy or dispute.

After operating a Snap-on dealership for approximately nine months, Vetter terminated the dealership agreement on June 6, 1991. William Vetter and Elaine Lapointe-Vetter's suit in state court, filed some twenty months later, alleges intentional and/or negligent representation, negligence, and interference with economic advantage in connection with William Vetter's signing of the dealership agreement.

## DISCUSSION

Petitioner seeks to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 4.[1] The parties do not contest that the dealership agreement evidences a transaction involving interstate commerce. *See* 9 U.S.C. § 2.

### A. Petition to Compel Arbitration.

[redacted] First, this court must determine whether Snap-on and Vetter agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). If the arbitration clause is valid and the claims fall within the scope of the arbitration clause, then the dispute must be submitted to arbitration. In this case, it is clear that Vetter's claims arise out of or are related to his dealership agreement, and thus fall within the scope of the arbitration clause.

[redacted] Despite the affidavits provided by Vetter, there can be no genuine dispute that the parties agreed to arbitrate this controversy. In Vetter's state court affidavit, dated April 2, 1993, Vetter states that

> [a]t no time did any of them explain to me the significance of the arbitration provision in paragraph 11.... At no time did they tell me that I was losing my rights, in the event I had a dispute with Snap-On, (a) to file a case in court, (b) to have a jury determine the facts and decide whether I was entitled to any money from Snap-On, (c) to have legal rules of evidence apply to prevent improper matters from being considered, (d) to appeal to another court from any decision which might be entered, or (e) otherwise to have my dispute handled in court in the normal manner. My understanding at the time was that every citizen had the right to resort to court if he had a dispute. At no time was I advised that any dispute I had with Snap-On had to be arbitrated....

In a similar case where appellant claimed to have been misled by appellee's failure to disclose the meaning and effect of an arbitration clause, the court stated that

> [w]e know of no case holding that parties dealing at arm's length have a duty to explain to each other the terms of a written contract. We decline to impose such an obligation where the language of the contract clearly and explicitly provides for arbitration of disputes arising out of the contractual relationship.

*Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir.1988). I specifically find that no special relationship or fiduciary duties existed between Snap-on and Vetter. The agreement between the parties indicates that their relationship was based on an arm's length, commercial transaction.

[redacted] As the Ninth Circuit panel in *Cohen v. Wedbush* further discussed, even if an actual misrepresentation was made regarding the function or effect of the arbitration

1. In pertinent part, 9 U.S.C. § 4 states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 [28 USCS §§ 1 et seq.], in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

clause, the misrepresentation could render the contract voidable only if the party had reasonably relied upon the misrepresentation. *Id.* (citing 12 S. Williston, *The Law of Contracts* § 1515B, at 485 (3d ed. 1970)). Such reliance cannot be reasonable when the party could have, "through the exercise of reasonable diligence, ascertained the truth of the matter." *Id.* There can be no unfairness in expecting Vetter to have read the contract he signed. *See id.* Furthermore, the arbitration provision was not hidden from Vetter. It was a large paragraph with a clear subheading in capital letters ("RESOLUTION OF DISPUTES—ARBITRATION") located just inches above Vetter's signature.

■ In an affidavit prepared just prior to the hearing on the motion to compel arbitration and the petition for a stay of state court proceedings, dated September 29, 1993, Vetter asserts again that Snap-on's employees "never explained to me that the agreements contained a provision which required me to resolve any dispute with Snap–On by arbitration." In addition, however, Vetter asserts an entirely new claim that "Snap–On's employees led me to believe that, if I had a dispute with Snap–On in the future, I could go to court to resolve that dispute." This vague assertion still does not give rise to a genuine claim of fraudulent inducement of the arbitration provision itself. Besides being inconsistent with Vetter's earlier affidavits and Vetter's statements of fact presented in briefs, this statement is "directly contrary to the specific and unambiguous terms of a written arbitration agreement [and does] not, as a matter of law, state a claim for fraud." *Id.* at 288.

■ Vetter also argues that the arbitration clause is invalid because it lacks a warning notice mandated by Montana law. Section 27–5–114(4), Montana Code Annotated, requires that all contracts bear a conspicuous warning regarding the arbitration clause.[2] In his brief, Vetter cites *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S.

468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), for the proposition that state arbitration law procedural provisions are enforceable if they do not conflict with federal policy. *Volt* is distinguishable, however, because that arbitration clause was governed by California state law. *Id.* at 477, 109 S.Ct. at 1254. Here, the arbitration clause provides that it is governed exclusively by the Federal Arbitration Act (FAA) according to the rules of the American Arbitration Association (AAA). Snap-on does not seek to compel arbitration under Montana state law but under federal law, which governs this arbitration clause.

■ Unlike Montana law, federal law imposes no similar warning requirement. Furthermore, the validity generally of an arbitration clause affecting interstate commerce is governed by federal law. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Relying on the Supremacy Clause (Article 6, clause 2) of the United States Constitution, the United States Supreme Court has held that the FAA "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1, 12 (1984). State law is applicable only for fashioning general contract principles. *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987).

■ Vetter next argues that the arbitration clause is invalid because it lacks consideration and mutuality of remedy. The subject sentence allows Snap-on to seek "temporary relief from a court including but not limited to an injunction, pending arbitration of any dispute...." However, this provision does not permit Snap-on to litigate whereas Vetter must arbitrate. Rather, Snap-on may seek temporary assistance from a court pending arbitration. For example, this provision allowed Snap-on to present this court with a petition to compel arbitration and a

---

**2.** The statute provides that "[n]otice that a contract is subject to arbitration *pursuant to this chapter* shall be typed in underlined capital letters on the first page of the contract; and unless such notice is displayed thereon, the contract may not be subject to arbitration." 27–5–114(4), M.C.A. (1991) (emphasis added).

petition for a preliminary injunction. Mutual consideration exists because both Vetter and Snap-on agree to arbitrate "any controversy or dispute arising out of or relating to" the dealership agreement.

Vetter argues too that the entire agreement is void because it was fraudulently induced and also unconscionable. This arbitration provision specifies, however, that disputes relating to the parties' entry into the agreement are to be arbitrated. Thus, arguments striking in this way at the validity of the entire agreement must be submitted to the arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–06, 87 S.Ct. 1801, 1805–07, 18 L.Ed.2d 1270 (1967). Additionally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941. Indeed, arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). Thus, all of Vetter's defenses to the dealership agreement may be submitted to the arbitrator for decision.

Finally, Vetter argues that the arbitration provision contains invalid forum selection and limitation of action clauses. The forum selection clauses are not material to this dispute since Snap-on has requested arbitration in the same location as Vetter's litigation and has also designated Montana arbitrators. Vetter may argue to the arbitrators that Montana law nullifies the one year limitation period set forth in the arbitration provision. *See e.g., O'Neel v. National Ass'n of Securities Dealers, Inc.*, 667 F.2d 804, 807 (9th Cir.1982). This time limitation is a procedural matter best decided by the arbitrator.

Accordingly, the parties entered into a valid agreement to arbitrate the disputes in question and, thus, the petition to compel arbitration should be granted. The court notes that the arbitration agreement is also valid as to Vetter's claims against Snap-on employees, but the court declines to compel

Vetter to arbitrate his claims against third parties who are not before the court. The state court has jurisdiction over the Snap-on employees and may order Vetter to arbitrate those claims.

**B. Application for Preliminary Injunction.**

Snap-on seeks a stay of William Vetter's state court action. Snap-on does not seek a stay of Elaine Lapointe–Vetter's claims. The stay sought by Snap-on is generally prohibited by the Anti–Injunction Act, 28 U.S.C. § 2283, but three exceptions exist and one exception is applicable in this case. *See Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1742, 26 L.Ed.2d 234 (1970). Under section 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, *or to protect or effectuate its judgments.*" 28 U.S.C. § 2283 (emphasis added).

Because the petition to compel arbitration should be granted, any further proceedings in state court between William Vetter and Snap-on should be stayed as inconsistent with this order. This stay thus falls within the third exception contained in the Anti–Injunction Act, which exception allows this court to protect or effectuate its order compelling arbitration.

To secure a preliminary injunction, the moving party "must show either (1) a likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." *Taylor v. Honig*, 910 F.2d 627, 631 (9th Cir.1990). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Id.* (citing *Oakland Tribune Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir.1985)). Snap-on has presented the court with the parties' agreement to arbitrate any dispute relating to their dealership agreement and evidence that Vetter has at-

tempted to litigate a dispute within the scope of the arbitration agreement. Thus, Snap-on has shown a likelihood of success on the merits and the possibility of the irreparable harm of losing the benefits of its arbitration agreement.

■ Vetter's motion to stay arbitration, dated September 30, 1993, is made upon the ground that Vetter will be irretrievably damaged if a court does not determine the validity of the arbitration clause and the scope of its coverage. Vetter argues that he will be irretrievably damaged if forced to arbitrate because he cannot afford to do so. The court finds that Vetter has already received the sought-after judicial determination of the validity of the arbitration clause and the scope of its coverage, and that inability to pay for arbitration as opposed to litigation does not rise to the level of irretrievable damage.

Snap-on is entitled to its requested relief staying state court proceedings pending the arbitration. However, because this court assumes, in light of the above, that neither Vetter nor the state court system will proceed further, no formal stay or injunction seems necessary. Out of deference to and respect for the state court, therefore, none will enter at this time.

Accordingly,

IT IS HEREBY ORDERED that Snap-on's motion to compel arbitration is GRANTED.

IT IS FURTHER ORDERED that William C. Vetter shall submit to arbitration his claims against Snap-on which are currently pending in Cause No. 77498 in the District Court of Missoula County.

IT IS FURTHER ORDERED that Snap-on's petition for injunctive relief related to Cause No. 77498 in the District Court of Missoula County is GRANTED, but no formal order need enter at this time.

IT IS FURTHER ORDERED that Vetter's motion to stay arbitration is DENIED.