97 F.3d 1460
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PAINEWEBBER, INC., Plaintiff-Appellee,
v.
David F. BAHR, Defendant-Appellant.
 No. 94-36026.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 6, 1996.
Decided Sept. 24, 1996.
 
 Before: FLETCHER, NOONAN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 David Bahr appeals from the district court's order granting PaineWebber's petition to compel arbitration. Bahr moved the district court to abstain from deciding PaineWebber's petition, to dismiss under Fed.R.Civ.P. 19 for failure to join an indispensable party, and to dismiss under Fed.R.Civ.P. 12(b)(6) on the grounds of collateral estoppel. Bahr opposed PaineWebber's petition on the ground that he had been fraudulently induced and coerced into signing the arbitration agreement. The district court denied Bahr's motions and granted PaineWebber's petition to compel arbitration, concluding that Bahr's defenses of fraudulent inducement and coercion were infirm as a matter of law.
 
 
 3
 We affirm.
 
 
 4
 * Bahr was a successful stockbroker with Smith Barney Shearson. On August 20, 1993, he left Smith Barney Shearson and began to work at PaineWebber. In connection with Bahr's employment, Bahr and PaineWebber executed a "Statement of Understanding Regarding PaineWebber Compensation," which required Bahr to adhere to all of the policies and procedures of the "self-regulatory organizations with whom you are registered at PaineWebber." Bahr was also required to sign a Form U-4 entitled "Uniform Application for Securities Industry Registration and Transfer." The National Association of Securities Dealers ("NASD") requires securities brokers to complete and file a Form U-4 before being licensed to sell securities. It also requires transferring brokers, such as Bahr, to file an amended Form U-4. The Form U-4 contains an arbitration clause.
 
 
 5
 On September 3, 1993, Bahr executed a promissory note payable to PaineWebber. Pursuant to the note PaineWebber paid Bahr $572,230, which was to be forgiven without interest in equal payments over the next six years if Bahr remained employed at PaineWebber or was fired without cause. The note contained a clause requiring arbitration before the NASD for disputes arising over the note.
 
 
 6
 In June 1994, Bahr was PaineWebber's top-producing broker. PaineWebber alleges, however, that when it learned Bahr had violated securities regulations and PaineWebber's policies, it terminated him. PaineWebber then attempted to collect the $572,230 from Bahr pursuant to the note. Bahr refused to make payment. PaineWebber served a demand upon Bahr to arbitrate the dispute, as well as other disputes that had arisen out of Bahr's employment.
 
 
 7
 On July 26, 1994, Bahr instituted suit in King County Superior Court disputing the arbitrability of various claims, including PaineWebber's claim for the $572,230. Bahr contended that he was fraudulently induced and coerced into signing the arbitration agreement by PaineWebber employees Moss and Matthews. The court granted a temporary restraining order but ruled that whether the arbitration agreement was valid must be decided by a jury and scheduled trial for August 31, 1994.
 
 
 8
 On August 17, 1994, PaineWebber removed the case to federal court on the basis of diversity of citizenship and federal question jurisdiction. Bahr did not challenge the removal or seek to remand the case. Instead, he voluntarily dismissed the case.
 
 
 9
 On August 24, 1994, PaineWebber filed the instant petition to compel arbitration in federal court. On the same day, Bahr instituted a second suit against PaineWebber in state court to enjoin the arbitration.
 
 
 10
 In the federal case, the district court entered an order granting PaineWebber's motion to compel arbitration. The state court ruled that the district court order had collateral estoppel effect and therefore that Bahr's claims arising from his employment with PaineWebber must be submitted to arbitration. The state court stayed the action pending the outcome of the arbitration proceedings.
 
 
 11
 Bahr timely appealed the district court's order compelling arbitration. We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3).
 
 II
 A.
 
 12
 Bahr contends that the district court should have abstained under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) from deciding PaineWebber's petition. The district court's refusal to abstain is reviewed for an abuse of discretion. Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1367 (9th Cir.1990).
 
 
 13
 Because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....' " Colorado River, 424 U.S. at 817 (internal quotations omitted). Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Id. at 813. "[W]e emphasize that our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983).
 
 
 14
 Bahr has not demonstrated "exceptional circumstances" that would compel abstention. In the instant case, no property is at stake, the federal and state forums are equally convenient, and both the state and federal cases were filed on the same day. See Colorado River, 424 U.S. at 818-19. Although we have no reason to doubt the state court's ability to protect the interests of the parties, "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action." Travelers Indemnity, 914 F.2d at 1370 (quotation omitted). Furthermore, "a decision to allow [the issue of arbitrability] to be decided in federal rather than state court does not cause piecemeal resolution of the parties' underlying disputes." Moses H. Cone, 460 U.S. at 20.
 
 B.
 
 15
 Bahr also contends that the district court should have dismissed PaineWebber's petition for failure to join an indispensable party under Fed.R.Civ.P. 19. A district court's decision concerning joinder pursuant to Rule 19 is generally reviewed for an abuse of discretion. United States ex rel. Morongo Band of Mission Indians v. Ross, 34 F.3d 901, 907 (9th Cir.1994). To the extent the determination whether the movant's interest is impaired by failure to join an allegedly indispensable party involves an interpretation of law, review is de novo. Id.
 
 
 16
 In order for Moss and Matthews to be indispensable parties, their joinder must satisfy the requirements of both Rule 19(a) and 19(b). Moss and Matthews are at most material witnesses. Their failure to be joined as parties does not impair the court's ability to accord "complete relief" to the parties. Fed.R.Civ.P. 19(a)(1). Neither do Moss and Matthews "claim[ ]" an interest relating to the subject of the action: Bahr did not include them in the original state suit, they have indicated no desire to be joined in the federal suit, and Bahr has failed to demonstrate that they have a legally protected interest in the suit. Fed.R.Civ.P. 19(a)(2); see 3A Moore's Federal Practice p 19.07[2.-0] ("The 'interest relating to the subject of the action,' that makes an absent person a party needed for just adjudication [under Rule 19(a)(2) ], must be a legally protected interest, and not merely a financial interest or interest of convenience."). Because the requirements for joinder under Rule 19(a) were not satisfied, the district court properly denied Bahr's motion to dismiss for failure to join an indispensable party.
 
 C.
 
 17
 Bahr also moved to dismiss PaineWebber's petition on the grounds that PaineWebber was collaterally estopped from relitigating the issue of arbitrability because the state court had already set a trial on the issue. The district court's determination whether collateral estoppel is available is reviewed by this court de novo. Miller v. County of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir.1994), cert. denied, 115 S.Ct. 2613 (1995). If collateral estoppel is available as a matter of law, the district court's decision whether to accord preclusive effect to the state court ruling is reviewed for abuse of discretion. Id.
 
 
 18
 The district court properly concluded that collateral estoppel was unavailable. A federal court must give the same preclusive effect to a state court ruling as the state court would accord. Nakash v. Marciano, 882 F.2d 1411, 1414 (9th Cir.1989). Under Washington law, four factors must be met for a decision to be given preclusive effect: Was the issue decided? Was there a final judgment on the merits? Was the party against whom the bar is asserted a party or in privity with a party to the prior decision? Will the application of the doctrine not work an injustice? Rains v. State, 674 P.2d 165, 169 (Wash.1983).
 
 
 19
 Bahr's voluntary dismissal of his first action pursuant to Fed.R.Civ.P. 41 voided all proceedings and orders in that action. See generally 9 Charles Wright & Arthur Miller, Federal Practice and Procedure § 2367, at 186 ("A voluntary dismissal without prejudice leaves the situation as if the action had never been filed."). The second state action was still proceeding in state court at the time the district court ruled on PaineWebber's petition. Thus, there was no final judgment on the merits in either state court action, precluding application of collateral estoppel. Rains, 674 P.2d at 169.
 
 D.
 
 20
 The district court granted PaineWebber's petition to compel arbitration without holding a trial on Bahr's defenses to arbitrability. The court appears to have concluded that the issue whether PaineWebber's claim was arbitrable was for the arbitrator rather than the court to decide. Even if the issue were one for the court, the court concluded that federal law applied, and that Bahr's defenses of fraud in the inducement and coercion were infirm as a matter of law. These are questions of law reviewed de novo.
 
 1.
 
 21
 The Federal Arbitration Act provides that "[i]f the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. When there is a claim of fraud "in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal the court may proceed to adjudicate it." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-404 (1967); see also AT & T Technologies Inc. v. Communications Workers et al., 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability ... is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").
 
 
 22
 PaineWebber's reliance on Mago v. Shearson Lehman Hutton, Inc., 956 F.2d 932, 934 (9th Cir.1994) for the assertion that because Bahr claims that both the arbitration clause and the entire contract were fraudulently induced, the issue of arbitrability must be submitted to the arbitrator rather than the court, is without merit. In Moseley v. Electronic & Missile Facilities, Inc., 374 U.S. 167, 171 (1963), the petitioner had "attacked not only the subcontracts, but also the arbitration clauses contained therein, as having been procured through fraud." The Supreme Court held that in such a case, the district court must determine whether there was fraud in the inducement of the arbitration clause. Id. Similarly, in Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 286-87 (9th Cir.1988), the plaintiff claimed fraud in the inducement of both the arbitration clause and the contract as a whole. The court held that the claim of fraud in the inducement of the arbitration "bears directly on the validity of their assent to the arbitration clause. This issue is therefore not suitable for arbitration and the courts 'may proceed to adjudicate it.' " Id. at 286 (quoting Prima Paint, 388 U.S. at 404). The court, rather than the arbitrator, must decide the threshold question of whether PaineWebber fraudulently induced and/or coerced Bahr to agree to the arbitration clause.
 
 2.
 
 23
 Pursuant to the Federal Arbitration Act, written agreements to arbitrate a dispute such as the instant dispute are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Relying on Cohen, 841 F.2d at 285, the district court held that the validity of the arbitration agreement between PaineWebber and Bahr was a matter of federal law, and that because the alleged fraudulent misrepresentation directly conflicted with the language of the arbitration clause, Bahr's claim of fraudulent inducement was infirm as a matter of law. The court also rejected Bahr's claim of coercion/adhesion.
 
 
 24
 Cohen 's continued vitality is dubious in light of recent Supreme Court authority. See Doctor's Assocs., Inc. v. Casarotto, 116 S.Ct. 1652, 1656 (holding that "state law may be applied [to determine the validity of arbitration agreements] if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. Thus, generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2") (internal citation and quotation marks omitted) (first emphasis in original); First Options of Chicago, Inc. v. Kaplan, 115 S.Ct. 1920 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts.") (emphasis added); see also Perry v. Thomas, 482 U.S. 483, 492-93 n. 9 (1987). We need not resolve the apparent conflict between Cohen and these cases, however, because we conclude that Bahr has not produced sufficient evidence of fraudulent inducement under either federal or state law. If we apply federal law, Bahr's defense of fraudulent inducement is infirm as a matter of law because the alleged misrepresentations contradict the language of the contract. Cohen, 841 F.2d at 285. Under Washington law, a claim of fraud requires the establishment of nine elements, including the right to rely on the alleged misrepresentation. Su v. M/V Southern Aster, 978 F.2d 462, 472-73 (9th Cir.1992) (citing Markov v. ABC Transfer & Storage, 457 P.2d 535, 539 (Wash.1969)), cert. denied, 508 U.S. 906 (1993). Reliance on the alleged misrepresentation must be reasonable. Williams v. Joslin, 399 P.2d 308, 309 (Wash.1965). Moss and Matthew's alleged statements that the arbitration clause would apply only if Bahr voluntarily terminated his employment conflict with the plain language of the agreement. Bahr obviously was aware of the language and was aware that it did not accord with the alleged interpretation. Otherwise the alleged discussion would not have transpired. Bahr was a sophisticated businessman, himself. He had in his previous employment been required to sign the U-4 form required by the NASD, that contains the arbitration clause. It was not reasonable for Bahr to think that the PaineWebber recruiters could alter the meaning of its plain language. Bahr's reliance on the statements was not reasonable.
 
 
 25
 Bahr's second defense (described variously as coercion, duress, and adhesion) is that the arbitration agreements are invalid because he had no choice but to sign them. Under either federal or state law, Bahr has not presented sufficient evidence to create a genuine issue of material fact as to this defense. Courts have repeatedly rejected the assertion that the U-4 is an unconscionable adhesion contract simply because all securities brokers are required to execute them in order to deal. See, e.g., Cohen, 841 F.2d at 286. Neither has Bahr made a particularized showing of coercion, duress, or adhesion. He was a very successful broker being sought by PaineWebber. His bargaining position was strong. Even if it were not, "[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991).
 
 
 26
 Duress or business compulsion is a defense which must be proven by the 'victim' who seeks to escape liability. To establish duress or coercion, there must be proof of more than reluctance to accept or financial embarrassment. The assertion of duress must be proven by evidence that the duress resulted from the other's wrongful or oppressive conduct. The mere fact that a contract is entered into under stress or pecuniary necessity is insufficient. Generally, circumstances must demonstrate a person was deprived of his free will at the time he entered into the challenged agreement in order to sustain a claim of duress.
 
 
 27
 Retail Clerks Health & Welfare Trust Fund v. Shopland Supermarket, Inc., 640 P.2d 1051, 1054 (Wash.1982) (citations omitted). Bahr was an experienced businessman--a highly successful broker for many years before joining PaineWebber. There is no evidence that he was unable to understand the terms of the arbitration agreements. While he may have been required to sign the agreements in order to retain the money and to keep working for PaineWebber, this is insufficient to establish coercion.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3