Mary Jones appeals from a judgment dismissing her suit for failure to comply with an order to arbitrate her claims against Merrill Lynch, Pierce, Fenner Smith, Inc. ("Merrill Lynch"), and J. Edward Porter. We affirm conditionally.
On August 12, 1982, Mrs. Jones opened account number 524-85812 with Merrill Lynch for the investment and management of proceeds from the settlement of a wrongful death action and an insurance policy on the life of her deceased husband. In doing so, she signed a "Customer Account Agreement" ("Agreement"), a copy *Page 334 
of which she received by mail with blank spaces for her signature, each of which was marked with an "X." The Agreement contained the following pertinent language:
 "In consideration of your accepting and carrying one or more accounts for the undersigned [Mrs. Jones], the undersigned hereby agrees. . . .
". . . .
"11. Agreement to Arbitrate Controversies
 It is agreed that any controversy between us arising out of your business or this agreement
shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. as the undersigned may elect.
"12. The Laws of the State of New York Govern
 This agreement and its enforcement shall be governed by the laws of the State of New York; shall cover individually and collectively all accounts which the undersigned may open or reopen with you; and shall enure to the benefit of your successors. . . ."
(Emphasis added). By May 1983, the plaintiff had deposited with Merrill Lynch a total of $350,000. In March 1984, Merrill Lynch also opened in her name, allegedly without her consent, another account, account number 524-96284.
On November 4, 1988, she sued Merrill Lynch and Mr. Porter, its representative, alleging that improper activities of the defendants had resulted in a loss of over half of her $350,000 investment. More specifically, the plaintiff contended that "beginning on or about September 29, 1983, and continuing until on or about July 27, 1988, [the defendants] wrongfully, intentionally, fraudulently, maliciously, and deceptively manipulated . . . and 'churned' " her accounts. Count one of her seven-count complaint alleged excessive trading of securities, which, she contended, amounted to a violation of Ala. Code 1975, § 8-6-17.[1] Count two alleged fraudulent conversion of securities from a cash account to a "margin" account, in violation of § 8-6-17. Count three alleged breach of fiduciary duty. Count four alleged conversion of the $350,000 investment to the use of the defendants. Counts five through seven alleged, respectively, knowing, reckless, and innocent misrepresentation of material facts regarding the $350,000 investment.
On December 6, 1988, the defendants filed a "Motion to Compel Arbitration and for Stay Pending Arbitration" of the dispute pursuant to Clause 11 of the Agreement. On March 3, 1989, the plaintiff filed an amended and restated complaint that contained the same counts as alleged in her original complaint. On April 10, 1989, the Honorable Stuart Leach, Jefferson County Circuit Court judge, conducted a pretrial hearing to consider various motions, including the defendants' motion to compel arbitration. After considering affidavits, briefs, and "heated argument from counsel for both parties," the trial judge, on June 16, 1989, granted the defendants' motion to compel arbitration.
On June 21, 1989, following the trial court's denial of a motion for "reconsideration," the plaintiff filed a motion requesting the trial court to provide a statement, pursuant to Rule 5, A.R.App.P., that would allow her to seek to appeal from the order compelling arbitration. The judge, on June 29, 1989, granted her motion, provided the statement required by Rule 5, and certified a number of questions to this Court for immediate appeal. On July 11, 1989, we denied the plaintiff's petition for permission *Page 335 
to appeal the interlocutory order compelling arbitration.
On August 28, 1989, the plaintiff filed a motion to set aside the order compelling arbitration. On September 22, 1989, the judge heard arguments on that motion; on September 28, 1989, the court denied the motion, but expressly retained jurisdiction of the case pending a decision by the arbitration board to take jurisdiction.
On November 3, 1989, the plaintiff submitted a statement of claims to the National Association of Securities Dealers, Inc. ("NASD"). However, she refused to sign the "NASD Uniform Submission Agreement," requisite to submitting her claims to arbitration, because, she argues, "by execution of the agreement she would consent to arbitrate her claims against Merrill Lynch and would thereby waive any objection [that] she might have to the validity, enforceability and revocability" of Clause 11 of the Agreement.[2] Consequently, on January 25, 1990, the NASD notified her that it was "closing the case."
On March 14, 1990, Merrill Lynch filed a "Motion to Dismiss for Failure to Comply with Court Orders and for Want of Prosecution." The plaintiff, on March 28, 1990, responded by filing a second amended complaint, containing an eighth count, in which she sought to reform the Agreement pursuant to Ala. Code 1975, § 8-1-2, by the deletion of Clause 11.[3]
With her second amended complaint, the plaintiff also filed a motion to stay arbitration, supported by a supplemental brief and various affidavits. On April 5, 1990, the trial judge conducted a hearing on all motions, including the "Motion to Dismiss for Failure to Comply with Court Orders and for Want of Prosecution." On June 19, 1990, the judge entered the following order:
 "This Court is of the opinion that it has no alternative but to grant Defendant's motion to dismiss this case, and accordingly, the case is hereby dismissed without prejudice to Plaintiff insofar as the initiating or maintaining [of] a claim relating to the issues in this case with the arbitration forum selected or to be selected by Plaintiff. In all other respects, this dismissal is with prejudice and costs are hereby taxed to Plaintiff."
On appeal, the plaintiff contends that the Agreement must be reformed to eliminate Clause 11 because (1) the agreement was procured by fraud; (2) there was no mutual assent to the agreement to arbitrate; (3) no agreement was made to arbitrate any disagreements involving account number 524-96284; (4) the agreement is unconscionable; and (5) the agreement constitutes an impermissible waiver of the right to a jury trial provided under Alabama law. In addition, she insists that the arbitration request is time-barred.
 I. Fraud
The plaintiff first insists that state law controls the disposition of this case. In particular, she contends that the defendants waived any federally created rights arising under the Federal Arbitration Act, 9 U.S.C. § 1-15 (1982) ("FAA"), as a result of Mr. Porter's execution of "Form U-4," the "Uniform Application for Securities Industry Registration or Transfer," in which he agreed to "abide by, comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions, . . . and rules and regulations" of Alabama in consideration for registration by this state as a representative of Merrill Lynch. Consequently, she insists, the defendants "agreed to be bound by the law of Alabama."
Her reliance on Volt Information Sciences, Inc. v. Board ofTrustees of Stanford Junior University, 489 U.S. 468,109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), as support for this argument is misplaced. The contract involved in Volt Information Sciences *Page 336 
contained a choice of law clause providing for the application of California law in the event of a dispute. That case merely held that where a contract contained a choice of law clause, specifically providing for the application of California law in the event of a dispute, California's statute providing for a stay of arbitration "pending resolution of related litigation" was not preempted by the FAA. Id. at 471, 477,109 S.Ct. at 1251, 1255. The Court concluded that the parties had not waived their federally created rights because their "agreement did not require arbitration to proceed in [that] situation." Id. at 475, 109 S.Ct. at 1253 (emphasis added).
Not only does the Agreement at issue in this case contain no clause providing for the application of Alabama law, but the practical and unacceptable result of the plaintiff's argument would be to render the FAA inoperative in all similar disputes within this state. Moreover, it is well settled that the FAA applies to cases, such as this one, in which transactions in securities are involved. Ex parte Merrill Lynch, Pierce, Fenner Smith, 494 So.2d 1, 2 n. 1 (Ala. 1986). We are thus constrained to apply federal law insofar as the FAA has circumscribed the sphere of operation of state law. SeeSouthland Corp. v. Keating, 465 U.S. 1, 16, 104 S.Ct. 852, 861,79 L.Ed.2d 1 (1984); Ex parte Alabama Oxygen Co.,433 So.2d 1158, 1168 (Ala. 1983), (Maddox, J., dissenting), vacated,452 So.2d 860 (Ala. 1984) (adopting dissenting opinion of Maddox, J., as opinion of the Court).
The FAA, in pertinent part, provides:
 "§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate
 "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
". . . .
 "§ 4 Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination
 "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 [28 U.S.C. § 1 et seq.], in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."
9 U.S.C. § 2, 4 (1982) (emphasis added). In the context of allegations of fraud in the inducement of a contract involving interstate commerce, these sections involve an interrelationship of federal and state law. See, generally, R. Connell, The Federal Arbitration Act: The Expanding Impact ofState Law Upon Rigorous Enforcement, 20 J.Mar.L. Com. 327 (1989).
The polestar in our analysis of this interrelationship isPrima Paint Corp. v. Flood Conklin Manufacturing Co.,388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In that case, the parties entered into a "Consulting Agreement" containing a comprehensive arbitration clause. After a dispute arose, Flood Conklin served notice of "intention to arbitrate." Id. at 398, 87 S.Ct. at 1803. Prima Paint responded *Page 337 
by filing suit in federal court, seeking rescission of the contract on the grounds that it had been procured by fraud. In particular, Prima Paint alleged that Flood Conklin "had fraudulently represented that it was solvent and able to perform its contractual obligations, whereas it was in fact insolvent." Id. In holding that the dispute was subject to arbitration, the United States Supreme Court stated:
 "Under § 4, with respect to a matter within the jurisdiction of the . . . courts save for the existence of an arbitration clause, the . . . court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the 'making' of the agreement to arbitrate — the . . . court may proceed to adjudicate it. But the statutory language does not permit the . . . court to consider claims of fraud in the inducement of the contract generally. . . . We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a . . . court may consider only issues relating to the making and performance of the agreement to arbitrate."
Prima Paint, 388 U.S. at 403-04, 87 S.Ct. at 1806 (footnotes omitted; emphasis added). The Court reasoned that as long as the arbitration clause was broad enough to encompass claims of fraud in the inducement of the contract, such claims were, themselves, subject to arbitration. Id. at 402, 406,87 S.Ct. at 1805, 1807; see also Ex parte Costa Head (Atrium), Ltd.,486 So.2d 1272, 1276 (Ala. 1986).
Since Prima Paint, it has become clear that in cases involving claims of fraud in the inducement of a contract affecting interstate commerce, the court must first determine whether the fraud claim is directed solely at the arbitration clause itself. Coleman v. Prudential Bache Securities, Inc.,802 F.2d 1350, 1352 (11th Cir. 1986) (must be asserted that "arbitration clause itself, standing apart from the whole agreement, was induced by fraud"); Bhatia v. Johnston,818 F.2d 418, 422 (5th Cir. 1987) (must be asserted that "arbitration clause alone, as opposed to the Customer Agreement generally," had been induced by fraud); see also Schact v. Beacon Ins. Co.,742 F.2d 386, 390 (7th Cir. 1984). If so, the party opposing arbitration is entitled to a trial involving state law issues relating to the making of the arbitration clause. See Cohen v.Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 286 (9th Cir. 1988);Curtis v. Newhard, Cook Co., 725 F. Supp. 1072, 1074 (E.D.Mo. 1989).
If, however, looking beyond the ad hoc arguments of counsel, the court concludes that the claim of fraud actually bears upon the entire agreement and upon the activities of the parties in general, the provision in § 2 regarding the revocation of contracts does not preclude the federally created right to specific enforcement of the arbitration clause. See VillaGarcia v. Merrill Lynch, Pierce, Fenner Smith, Inc.,833 F.2d 545, 548 (5th Cir. 1987); Benoay v. Prudential-Bache Sec.,Inc., 805 F.2d 1437, 1441 (11th Cir. 1986); Coleman, 802 F.2d at 1352; Schact, 742 F.2d at 389. Were it otherwise, a skillfully crafted complaint would, in every case, necessitate a trial thus effectively eviscerating the FAA and circumventing the strong policy favoring arbitration. See Perry v. Thomas,482 U.S. 483, 491, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); MosesH. Cone Memorial Hosp. v. Mercury Const., 460 U.S. 1, 24,103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); An examination of the case at hand demonstrates the reality of that prospect.
In her original 19-page complaint, Mrs. Jones devoted only three paragraphs in the statement-of-facts section to the arbitration clause, alleging merely that the arbitration clause constituted an unenforceable contractual waiver of the right to a jury trial. Her first "amended and restated complaint," filed four months later, alleged that the arbitration clause itself had been "procured by fraud and [was] unenforceable pursuant to Section 2 of the Federal Arbitration Act." Furthermore, her second complaint alleged that the arbitration clause served as the vehicle through which *Page 338 
the defendants sought to perpetrate their various fraudulent schemes by "browbeat[ing] Mary Jones into accepting much less than the value of her claim." Finally, with the filing of the second amended complaint on March 28, 1990, she added Count eight, which averred that the arbitration clause was due to be rescinded because of "fraud of the defendant, inequitable conduct of the defendant, or a mistake of the plaintiff which defendant at the time knew or suspected." The ability of competent counsel to sharpen the issue relating to the arbitration clause progressively over time is readily apparent.
However, even ignoring, momentarily, the evolution of the arbitration issue in this case, we are troubled by the theory urged by the plaintiff that the defendants used that clause as a shield behind which to carry out fraudulent schemes. A similar theory was expressly rejected in Western HospitalsFederal Credit Union v. E.F. Hutton Co., 700 F. Supp. 1039
(N.D.Cal. 1988). In that case, the credit union signed an agreement containing an arbitration clause with E.F. Hutton a year after E.F. Hutton had allegedly churned and mismanaged the credit union's investments. When a dispute arose two years after the agreement was executed, the credit union filed suit in a federal district court, alleging that E.F. Hutton had "fraudulently induced plaintiffs to agree to arbitrate in an effort to minimize its liability for improper acts performedbefore the agreement was signed." Id. at 1041-42. (Emphasis added.)
Finding no "independent challenge" to the arbitration clause itself, the district court rejected the credit union's contentions and enforced the arbitration clause. In so doing, the court succinctly remarked that if it "accepted [the credit union's] argument, almost all investors would be able to circumvent arbitration clauses by alleging that the broker's improper conduct not only gives rise to specific causes of action, but voids the arbitration agreement designed to process such disputes." Id. at 1043 n. 1.
We believe that the logic of the district court is even more persuasive where, as here, the agreement was signedbefore the allegedly fraudulent activity. To countenance the contention that Merrill Lynch induced Mrs. Jones to sign the agreement in anticipation of fraudulent activity would allow the plaintiff to "bootstrap" her various claims and theories "into a separate reason for voiding the arbitration clause." See id. at 1042.
The plaintiff contends that the "central issue in this caseis whether Merrill Lynch owed a duty to [her] to disclose the .. . material facts regarding the arbitration agreement." Reply brief of appellant, p. 6 (emphasis in original). The omission to do so, the argument goes, constituted fraud in the making of the arbitration clause itself. Cf. Ala. Code 1975, § 6-5-104. We also reject that argument because Mrs. Jones's claim of breach of a fiduciary duty to disclose material facts applies as cogently to all of her claims as to the arbitration clause itself. For example, Count three, in all three of her complaints, alleges:
 "Defendants Porter and Merrill Lynch owed a fiduciary duty and a duty of good faith and fair dealing, a duty to communicate full and proper information to Plaintiff and to keep Plaintiff fully and adequately informed, a duty to protect the interests of Plaintiff and not profit at the expense of Plaintiff, and a duty to manage her account in a manner that could reasonably be expected to accomplish her objectives of preservation of principal and generation of income. All of these duties were breached by defendants Porter and Merrill Lynch, as such fiduciaries."
(Emphasis added.) Thus, the allegations of breach of fiduciary duty clearly encompass the full scope of the defendants' activities in connection with the plaintiff's investments and are not limited to the making of the agreement to arbitrate.
The plaintiff also cites Par-Knit Mills, Inc. v. StockbridgeFabrics Co., 636 F.2d 51 (3d Cir. 1980), in support of her argument for a jury trial on the alleged arbitration *Page 339 
clause issue. In that case, a dispute arose between Par-Knit Mills, a garment manufacturer, and Stockbridge Fabrics, its distributor, regarding the enforceability of an arbitration clause contained in a series of forms signed by Par-Knit's "production manager." The forms preceded delivery of textiles purchased on the basis of a series of oral contracts. Par-Knit contended that the production manager's signature on the forms in a space designated "Buyer's Acceptance," merely represented a confirmation of delivery dates. Because the court was thus confronted with a number of genuine issues of fact, including issues of agency and the actual or apparent authority of the production manager to bind the company to any type of agreement, Par-Knit was entitled to a jury trial on those issues.
No such issues are here presented. Here, the plaintiff merely signed, in her own capacity, the Agreement she had received through the mail. Therefore, the trial judge, having correctly found no triable issues, properly concluded that the fraud claim was not directed solely at the arbitration clause. Therefore, because we have concluded that the plaintiff has failed to satisfy the threshold requirement articulated in the FAA, we need not and, therefore, do not, reach the issue of whether the defendants' failure to explain the consequences of the arbitration clause constituted fraud or breach of a fiduciary duty.
 II. Mutual Assent
The plaintiff insists that Clause 11 is unenforceable because there was no agreement to arbitrate. However, she argues not that the defendants affirmatively misrepresented the existence or the effects of the arbitration clause, but merely that the defendants failed to provide any explanation at all regarding the consequences of Clause 11. The absence of an explanation, she insists, constituted a breach of fiduciary duty that would constitute grounds for rescission of the clause pursuant to Ala. Code 1975, § 8-1-2.
The plaintiff's contention is, therefore, merely a restatement of the fraud and breach-of-fiduciary-duty arguments previously discussed. To allow the disposition of this case to turn on a bare restatement of an allegation would clearly place form over substance. Because we have already determined that this case is not about fraud in the inducement as to the arbitration clause itself, we also reject the plaintiff's argument that the arbitration clause is unenforceable because of the absence of mutual assent.
 III. Arbitrability of the Second Account
It is undisputed that the plaintiff did not sign a separate agreement expressly authorizing the opening of the second account — account number 524-96284. She alleges that the defendants not only improperly opened that account, but transferred her securities and property from one account to the other without proper authorization. Consequently, she insists, transactions involving account number 524-96284, such as unauthorized purchases made in account number 524-85812 and transferred to and sold in account number 524-96284, are not subject to arbitration under the terms of the Agreement that she signed upon the opening of account number 524-85812.
In support of her argument, the plaintiff refers to Clause 12 of the Agreement, which provides that the "agreement . . . shall cover individually and collectively all accounts which the undersigned may open or reopen with [Merrill Lynch]." She insists that because the second account was not one that she
opened or reopened, the second account is not subject to the arbitration provision. Merrill Lynch, however, contends that the phrase in Clause 11 providing for arbitration of "any controversy . . . arising out of [its] business" is sufficiently broad to encompass the transactions connected with the disputed account.
The question thus becomes a "matter of contractual interpretation to be determined by the intent of the parties."Ex parte Warrior Basin Gas Co., 512 So.2d 1364, 1367-68 (Ala. 1987). A determination by the trial judge regarding the intent of the parties to arbitrate is a question of fact and, as such, will not be disturbed unless *Page 340 
clearly erroneous. Id. at 1368 (citing Seaboard Coast Line R.R.v. Trailer Train Co., 690 F.2d 1343, 1348-49 (11th Cir. 1982).
We are unable to conclude that the trial judge's findings, based on the language of the Agreement itself, numerous affidavits, and the oral arguments of both parties, were clearly erroneous. For example, the language of the Agreement fairly supports a finding that the parties intended to arbitrate disputed claims. This is especially true with regard to the plaintiff's allegations that the defendants used the second account as a repository or transfer point for securities purchased through the first account. The transactions arising out of account number 524-96284 are thus so inextricably intertwined with those involving account number 524-85812 as to be inseparable absent resort to mere sophistry.
In addition, we note that the trial judge, in properly applying "federal substantive law of arbitrability," was constrained to construe the intent of the parties generously in favor of arbitrability. Ex parte Warrior Basin Gas Co., 512 So.2d at 1369; see also, Mitsubishi Motors Corp. v. SolerChrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346,87 L.Ed.2d 444 (1985). Moreover, "federal policy favoring arbitration and requiring courts to 'rigorously' enforce arbitration agreements," mandates the finding of intent to arbitrate absent "positive assurance" that the parties did not so intend. Ex parte Warrior Basin Gas Co., 512 So.2d at 1370. We, therefore, conclude that the trial judge's findings were not clearly erroneous.
 IV. Unconscionability
Likewise, we find no merit in the plaintiff's contention that the arbitration clause is due to be rescinded on the ground of unconscionability. Arbitration clauses are not "inherently unfair or oppressive." See Coleman v. Prudential BacheSecurities, Inc., 802 F.2d 1350, 1352 (11th Cir. 1986); see also Surman v. Merrill Lynch, Pierce, Fenner Smith,733 F.2d 59, 61 n. 1 (8th Cir. 1984). Furthermore, because the plaintiff's claims of fraud and breach of fiduciary duty are directed at the entire contract, the issue of unconscionability is also subject to arbitration. See Coleman, 802 F.2d at 1352.
Neither does the clause constitute an unenforceable waiver of the right to trial by jury under Ala. Const. 1901, Art. I, § 11. As this Court has stated: "The Federal Arbitration Act . . . creates a federal right to specific enforcement of arbitration agreements which are a part of contracts involving interstate commerce, notwithstanding any state substantive or procedural policies to the contrary." Ex parte Alabama OxygenCo., 433 So.2d at 1168. Moreover, the "public policy of this state is to encourage arbitration and amicable settlements of differences between parties." Wells v. Mobile County Bd. ofRealtors, 387 So.2d 140, 144 (Ala. 1980); see also Ex parteMerrill Lynch, Pierce, Fenner Smith, Inc., 494 So.2d 1, 4
(Ala. 1986). Arbitration clauses contained in contracts subject to §§ 2 and 4 of the FAA, which provide for judicial intervention and revocation "upon such grounds as exist at law or in equity," do not violate public policy or constitute an unenforceable waiver of the right to trial by jury. See Wells, 387 So.2d at 144.
 V. Timeliness of the Motion to Compel Arbitration
More problematic, however, is the plaintiff's contention that § 15 of the NASD Code of Arbitration Procedure bars submission to arbitration of the "dispute, claim or controversy regarding Paragraph 11 . . . due to the fact that more than six years have elapsed from the occurrence or event giving rise to the claim."[4] That section provides:
 "No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy. This section shall *Page 341 
not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction."
Id. She insists that the "occurrence or event giving rise to the dispute" is the execution, on August 12, 1982, of the Agreement containing the arbitration clause. The defendants, however, contend that the events of which § 15 speaks are the alleged instances of churning, unauthorized trading, and similar acts of the defendants as set forth in the plaintiff's complaints.
It cannot seriously be maintained that the plaintiff would have averred a cause of action for relief from the effects of the arbitration clause in the absence of the overriding substantive claims succinctly set forth in her complaints — claims that arose well within the period prescribed by § 15. For example, the plaintiff's complaints allege that "beginning on or about September 29, 1983, and continuing until on orabout July 27, 1988, [the defendants] wrongfully, intentionally, fraudulently, maliciously, and deceptively manipulated Plaintiff's accounts, and 'churned' Plaintiff's accounts." (Emphasis added.) As we have already determined, based on our discussion of the issue of fraud, supra, this case is not about the arbitration clause. Therefore, on the strength of the plain language of § 15, the arbitration request does not appear to be time-barred.
This conclusion is buttressed by the fact that the NASD did not refuse to take jurisdiction of the dispute when, on November 3, 1989, Mrs. Jones submitted a statement of claims to the NASD. Instead, the NASD responded on January 3, 1990, with a memorandum requesting a properly executed copy of the Uniform Submission Agreement. Only when the plaintiff refused to submit the Uniform Submission Agreement did the NASD notify her that it was "closing the case."
Finally, we consider whether the trial judge erred in granting the defendants' "Motion to Dismiss for Failure to Comply with Court Orders and for Want of Prosecution." Ala.R.Civ.P. 41(b) provides for the involuntary dismissal of an action upon "failure of the plaintiff to prosecute or to comply with [the Rules of Civil Procedure] or any order of [the] court." Although dismissal for failure to comply with a court order is a "harsh sanction," it is warranted where there is a "clear record of delay, willful default or contumacious conduct by the plaintiff." Selby v. Money, 403 So.2d 218, 220 (Ala. 1981). Because the trial judge is in the best position to assess the conduct of the plaintiff and the degree of noncompliance, his decision to grant a motion to dismiss for failure to prosecute will be accorded considerable weight by a reviewing court. Van Bronkhorst v. Safeco Corp., 529 F.2d 943,947 (9th Cir. 1976); Von Poppenheim v. Portland Boxing Wrestling Comm'n, 442 F.2d 1047, 1051 (9th Cir. 1971), cert.denied, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972). Therefore we will reverse that decision only upon a showing of abuse of discretion. Selby, at 220; Smith v. Wilcox County Bd.of Educ., 365 So.2d 659 (Ala. 1978).
Under the facts of this case, we are unable to say that the trial judge abused his discretion in dismissing the plaintiff's case with prejudice. On June 16, 1989, the trial judge granted the defendants' "motion to compel arbitration and for stay pending arbitration." The plaintiff never properly sought a review of that decision,[5] nor did she take the necessary steps to comply with the order. Instead, five months later, after she had submitted a statement of claims to the NASD, she refused to sign the Uniform Submission Agreement, a prerequisite for compliance with the order to arbitrate.
After another four months had elapsed, during which the NASD gave notice that it was closing the case for failure properly to begin the arbitration process, Merrill Lynch *Page 342 
filed its "motion to dismiss for failure to comply with court orders and for want of prosecution." In response, the plaintiff began a new round of litigation in the trial court by filing another complaint, a motion to stay arbitration, a brief, and affidavits — all directed at an issue that had been adjudicated in the trial court nine months earlier. On June 19, 1990, a year after the original order to arbitrate, the judge dismissed the case with prejudice.
Considering the issues presented, the conduct of the plaintiff, the patience of the trial judge, the strain on the court docket, and the cost to the defendants of prolonging the litigation, we conclude that the judge did not abuse his discretion in granting the defendants' motion to dismiss. Our holding is specifically conditioned, however, upon the willingness of the NASD to take jurisdiction of the plaintiff's claims and to reopen her case. Otherwise, the judgment will be reversed and the cause remanded for trial on the plaintiff's claims.
AFFIRMED CONDITIONALLY.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.
[1] Section 8-6-17 provides:
 "It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly, to:
"(1) Employ any device, scheme or artifice to defraud;
 "(2) Make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
 "(3) Engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person."
[2] Brief of appellant, p. 4.
[3] Section 8-1-2 provides:
 "When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention. . . ."
[4] Brief of appellant, at 51.
[5] It is now well settled in this state that a "petition for a writ of mandamus is the proper means to test a trial court'sgranting of a motion to arbitrate or the granting of a stay pending arbitration." Ex parte Alexander, 558 So.2d 364, 365
(Ala. 1990) (footnote omitted) (emphasis in original); see alsoA.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala. 1990).