SELLERS, Justice.
Larry Curry appeals from a judgment of the Houston Circuit Court dismissing his lawsuit against Gable Carl Miller, Jr., and Auto Owners Insurance Company ("Auto Owners") on the ground of failure to prosecute. We affirm.
Facts and Procedural History
On May 30, 2014, Curry was injured when the vehicle in which he was driving was struck from the rear by a vehicle being driven by Miller. Curry retained attorney Russell D. Johnson to represent him in the matter. On May 27, 2016, Johnson, on Curry's behalf, filed a personal-injury action against Miller. Johnson also asserted in the action a claim against Auto *1177 Owners seeking uninsured/underinsured-motorist benefits.[1]
On March 13, 2017, the trial court set the case for a bench trial on May 9, 2017, and, at Miller's request, set a status conference on April 11, 2017. At some point Curry's relationship with Johnson began to deteriorate, and Curry terminated Johnson's employment.
On March 24, 2017, Johnson filed a motion to withdraw as counsel, citing a "breakdown in communication" between him and Curry. Johnson requested in the motion to withdraw that the trial court continue the May 9, 2017, trial date to allow Curry time in which to obtain new counsel and to conduct discovery.
On April 3, 2017, the trial court granted Johnson's motion to withdraw. On the same day, Johnson filed with the trial court a lien, pursuant to § 34-3-61, Ala. Code 1975, for attorney fees and expenses. Johnson attached to the attorney-fee lien a copy of his affidavit and a copy of the contract Curry had signed. Johnson stated in the lien that, during his representation of Curry, Miller had made an offer to settle Curry's claims for $17,000; that Curry had accepted the offer to settle but had refused to sign the necessary releases; and that Johnson had filed the personal-injury action on Curry's behalf to prevent Curry's claims from being barred by the statute of limitations.
On April 18, 2017, the trial court entered an order stating that the status conference had been held on April 11, 2017; that defense counsel had attended the conference; that Curry failed to appear at the conference; and that Curry was to notify the court within 30 days of his intention either to proceed pro se or to retain counsel. The order further stated that failure to comply with the order could result in sanctions, including dismissal of the lawsuit. On the same day, the trial court rescheduled the bench trial for July 18, 2017.
On May 19, 2017, Miller and Auto Owners (hereinafter referred to collectively as "the defendants") filed a motion to dismiss Curry's claims for failure to prosecute, asserting that Curry had not attended the April 11, 2017, status conference and had not complied with the trial court's April 18, 2017, order requiring him to notify the court within 30 days of that order whether he intended to proceed pro se or to retain counsel. The trial court deferred ruling on the defendants' motion to dismiss for one week to give Curry ample opportunity to respond. Curry failed to respond, and the trial court entered an order on May 26, 2017, dismissing, with prejudice, Curry's lawsuit against the defendants.
On May 30, 2017, Kristy Kirkland entered an appearance for Curry and filed, pursuant to Rule 59(e), Ala. R. Civ. P., a motion to vacate the judgment of dismissal and to reinstate the action. As grounds, Kirkland stated, among other things, that Curry was 84 years old and had little knowledge of the legal system; that Curry had telephoned her office after receiving defense counsel's motion to dismiss for want of prosecution; that Curry did not understand the motion to dismiss because he did not realize a lawsuit concerning his accident had been filed; that Curry had maintained to her that he had had no notice of the April 11, 2017, status conference, which was set before Johnson withdrew as counsel; that Curry did not recall receiving an order from the trial court requiring him to inform the court of his intention either to proceed pro se or to retain counsel; and that Miller had only answered the complaint on January 18, *1178 2017. Kirkland finally stated in the motion to vacate that, considering that the lawsuit had been pending for less than six months, it was extremely premature for the trial court to issue a judgment of dismissal. Kirkland attached to the motion to vacate Curry's affidavit in which Curry stated that Johnson had not informed him of the April 11, 2017, status conference; that he did "not recall" receiving an order from the trial court requiring him to inform the court of his intention either to proceed pro se or to retain counsel; that when he telephoned Kirkland, he informed her that a lawsuit concerning the accident had not been filed; that Johnson did not perform to his satisfaction; that Johnson told him that he had settled his case; that Johnson did not consult with him concerning whether he could settle Curry's case; that he had filed a complaint with the Alabama State Bar against Johnson; and that he had not willfully refused to comply with orders of the trial court or failed to prosecute his case. The defendants filed a motion in response, asserting that Curry did have knowledge of the lawsuit Johnson had filed because, according to them, all correspondence concerning the lawsuit had been mailed to Curry at his personal address.
On August 22, 2017, following a hearing, the trial court entered an order finding that Curry's failure to comply with its April 18, 2017, order was willful for purposes of a dismissal under Rule 41(b), Ala. R. Civ. P. Accordingly, the trial court denied Curry's motion to vacate the judgment of dismissal. This appeal followed.
Standard of Review
" Ala. R. Civ. P. 41(b) provides for the involuntary dismissal of an action upon 'failure of the plaintiff to prosecute or to comply with [the Rules of Civil Procedure] or any order of [the] court.' Although dismissal for failure to comply with a court order is a 'harsh sanction,' it is warranted where there is a 'clear record of delay, willful default or contumacious conduct by the plaintiff.' Selby v. Money, 403 So.2d 218, 220 (Ala. 1981). Because the trial judge is in the best position to assess the conduct of the plaintiff and the degree of noncompliance, his decision to grant a motion to dismiss for failure to prosecute will be accorded considerable weight by a reviewing court. Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 947 (9th Cir. 1976) ; Von Poppenheim v. Portland Boxing & Wrestling Comm'n, 442 F.2d 1047, 1051 (9th Cir. 1971), cert. denied, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972). Therefore we will reverse that decision only upon a showing of abuse of discretion. Selby, at 220 ; Smith v. Wilcox County Bd. of Educ., 365 So.2d 659 (Ala. 1978)."
Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d 332, 341 (Ala. 1991). Moreover, " '[w]illful' is used in contradistinction to accidental or involuntary noncompliance. No wrongful motive or intent is necessary to show willful conduct." Selby v. Money, 403 So.2d 218, 221 (Ala. 1981).
Discussion
Curry contends that the trial court exceeded its discretion in dismissing his action against the defendants for failure to prosecute and, more specifically, for his failure to obey the trial court's April 18, 2017, order requiring him to inform the court within 30 days of the order whether he intended to proceed pro se or to retain counsel. Curry specifically contends that the fact that he does not recall receiving the trial court's April 18, 2017, order supports the conclusion that he was not guilty of contumacious or willful conduct. The trial court entered a detailed order stating its reasoning for dismissing the lawsuit:
*1179 "Beginning on March 24, 2017, with Russell Johnson's motion to withdraw as Curry's lawyer, Curry began receiving by mail at his address [in Dothan] a copy of every document filed until Ms. Kirkland entered her appearance. As a result, the record establishes undisputed prima facie evidence [that] Curry promptly by United States mail received copies of the following documents: (1) Johnson's motion to withdraw; (2) Johnson's lien for attorney's fees, attaching his affidavit as well as his contingency fee agreement with Curry; (3) [a] copy of the court's April 18, 2017, order and scheduling order from the circuit clerk; (4) [the defendants'] motion to dismiss for failure to prosecute filed May 19, 2017; (5) the court's order on May 26, 2017, one week after the filing of the motion to dismiss, approving the proposed order and dismissing the case.
"Curry's affidavit in support of setting aside the dismissal alleges the following: (1) Curry admits his residence and mailing address is [in Dothan]; (2) Curry denies knowing about the court date on April 11, 2017 [i.e., the status conference]; (3) Curry 'does not recall' receiving the April 18, 2017, court order [requiring him to inform the court of his intention either to proceed pro se or to hire counsel]; (4) Curry denies knowing a civil lawsuit was filed on his behalf; (5) Curry expresses general dissatisfaction with Mr. Johnson as his lawyer; [and] (6) a general denial of 'willfully refus[ing] to comply with court orders.' Oddly, Curry only affirmatively admits receiving the court's order of dismissal, but offers no explanation of how he may have failed to receive the other documents. All of these documents were delivered to him at [his personal address] the same way, by United States mail.
"The court finds from reviewing the evidence presented by the parties that the defendants have established prima facie evidence [that] Curry willfully failed to comply with a court order and that Curry has failed to offer sufficient evidence in response[;] Curry has not denied receiving a copy of Johnson's motion to withdraw and his claim for an attorney's fee lien, as well as the defendants' motion to dismiss. Accordingly, the court cannot accept his assertion that he did not know a lawsuit was filed. The circuit clerk mailed Curry a copy of the April 18, 2017, order, which he 'does not recall receiving.' Nonetheless, the attorney for the defendants attached another copy of the April 18, 2017, order with their motion to dismiss that Curry does not deny receiving. Likewise, it is notable that the only document Curry 'does not recall receiving' is the one document, the April 18, 2017, order, that is the basis for dismissal. Viewed in totality, the evidence supports the conclusion [that] Curry received five (5) documents placing him on notice that he needed to act on his case .... Essentially, Curry's only opposing evidence is his claim he does not recall receiving the court's April 18, 2017, order, yet he was mailed a second copy from the defense attorney prior to dismissal....
"The court accepts Curry's assertion that he may not have received notice of the April 11, 2017, court date [i.e., the status conference]. The court date was sent and notice issued before Johnson withdrew, although the hearing occurred after his withdrawal. But, this is a central reason why the court needed to know from Curry how he wished to proceed. It did not matter to the court which option he chose. It is unfair to the defendants to bear the costs of attending hearings and preparing for trial if Curry was abandoning his case.
"....
*1180 "The court notes, also, it has a valid reason for the April 18, 2017, order directing Curry to advise the court if he was proceeding with or without a lawyer. If Curry advised he desired an opportunity to seek an attorney, the court would have delayed the case further to give him an opportunity to retain counsel and allow the new lawyer time to prepare the case. Likewise, it is the court's experience in this type of case that if Curry wished to proceed pro se, the case could move forward immediately because pro se litigants typically (almost universally) do not engage in discovery or settlement negotiations. As a result, the April 18, 2017, order is important in allocating the court's resources and time, and the court had a valid reason for its request. The order was not a mere perfunctory order or attempt to ensnare an unwilling litigant. These factors, as well, were necessary to the defendants who were responsible for the costs of a lawyer. Whether further delay for discovery and negotiation or whether they needed to focus on trial directly impacts the legal fees the defendants ultimately must satisfy.
"In conclusion, while the initial impression may be to reinstate the case, a careful review clearly establishes that Curry's failure to act supports a finding that his behavior was 'willful' for purposes of Rule 41(b) involuntary dismissal. Curry has not affirmatively denied receiving all orders and documents after Johnson withdrew, and has failed to offer any explanation for his inaction. The standard of setting aside a Rule 41(b) involuntary dismissal is not met by a plaintiff averring he simply 'do[es] not recall' receiving a court order, with no further explanation, especially when coupled with uncontradicted evidence that he received the order as well as other critical documents."
(Footnotes omitted.)
Contrary to the trial court's findings, Curry maintains that the only document he received by United States mail at his address was defense counsel's motion to dismiss, which he says confused him because, according to Curry, he did not know that a lawsuit concerning his automobile accident had been filed. Curry asserts that the clerk's office sometimes makes mistakes in transferring a document and that, even when a document is properly transferred, the post office may deliver it to the wrong address. Curry further asserts, among other things, that the defendants have produced no receipts showing the mailing and delivery of any documents to him by certified mail, no affidavits from the employees in the clerk's office affirming that the notices were mailed, and no affidavit from Johnson, Curry's former attorney, affirming that documents relating to the action were actually sent to Curry. According to Curry, his affidavit supports his assertion that he did not receive any documents concerning his case, other than defense counsel's motion to dismiss which, he says, prompted him to contact Kirkland to represent him. The trial court found, however, and the record confirms, that, beginning with Johnson's motion to withdraw, Curry began receiving by United States mail all correspondence concerning the action. More specifically, notice of the trial court's April 18, 2017, order, which is the basis of the dismissal, was sent via United States mail to Curry at his address in Dothan. Curry does not affirmatively deny receiving the April 18, 2017, order; rather, he states in his affidavit only that he did "not recall" receiving an order from the trial court requiring him to inform the court whether he intended to proceed pro se or to retain counsel. As indicated, five documents were mailed to Curry at his *1181 address, any one of which would have placed him on notice that he needed to act on his lawsuit. Notably, one of the documents that was mailed to Curry was Johnson's lien for attorney fees in which Johnson stated:
"During representation of [Curry] ... defendant offered settlement in the amount of $17,000.00, which was accepted by [Curry], but who refused to sign a release. The undersigned then filed the present lawsuit due to the impending statute of limitations."
(Emphasis added.) Johnson certified in the lien that, on March 24, 2017, he served notice of the lien by certified mail and by first-class mail on Curry at his address in Dothan. Curry simply offered the trial court no plausible explanation as to why, out of all the documents mailed to him at his address, he would have received only one of those documents-defense counsel's motion to dismiss the action for want of prosecution. The trial court had before it sufficient evidence to reject Curry's assertion that he did know that a lawsuit had been filed on his behalf. Accordingly, the trial court did not exceed its discretion in concluding that Curry's failure to prosecute his lawsuit was "willful" for purposes of Rule a 41(b) involuntary dismissal.
Conclusion
The trial court's judgment of dismissal, entered pursuant to Rule 41(b), is affirmed.
AFFIRMED.
Stuart, C.J., and Bolin, Shaw, and Wise, JJ., concur.

At the time of the accident, Curry had an insurance policy with Auto Owners that included uninsured-motorist and underinsured-motorist coverage.